### GEORGE MYERS *vs.* LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY.

Suffolk.   November 17. — 22, 1876.   AMES & LORD, JJ., absent.

At the trial of an action on an oral contract of insurance upon the plaintiff's house, which was destroyed by fire on June 29, there was evidence that on March 10, an agent of the defendant, authorized to solicit insurance and "issue certificates binding the company during correspondence only," had an interview with the plaintiff, and they made a bargain for insurance; that the amount, rate and term were agreed upon, and the plaintiff requested the agent to bring the policy, when ready to his shop and he would settle for it, and the agent agreed so to do.   It did not appear that any certificate was issued to the plaintiff by the agent.   It also appeared that the agent notified the plaintiff by letter, when the policy was ready, and requested him to call for it, which the plaintiff did several times, but failed to find the agent in.   The agent kept the policy until a few days before the fire, when it was cancelled for non-payment of premium.   *Held*, that the evidence did not

show an oral contract of insurance on March 10, but one by a policy to be issued and delivered to the plaintiff, on payment of the premium, and that the action could not be maintained.

CONTRACT. Writ dated August 11, 1875. The declaration contained two counts. The first alleged that the defendant made to the plaintiff a policy of insurance against loss or damage by fire, on his dwelling-house, erecting and situate on Boyd Street, Watertown, for three years from March 10, 1875, for $5000; $2000 to attach from March 10, $2000 more to attach at the expiration of thirty days after March 10, and $1000 more to attach upon the completion of said dwelling-house; and that the policy was in the possession of the defendant, who refused to deliver the same to the plaintiff, and the plaintiff was unable to annex a copy or state further its terms; destruction of the house by fire, before completion and after the expiration of thirty days from March 10, 1875; and demand of payment of loss.

The second count alleged, that in consideration of the plaintiff's agreement to pay the premium at the rate of one and a quarter per cent. on the sum of five thousand dollars, the defendant agreed to insure the plaintiff against loss or damage by fire on his dwelling-house then erecting in Watertown, for the term of three years from March 10, 1875, in the following amounts: $2000 during thirty days next after said March 10, $4000 thereafter and until the completion of said dwelling-house, and $5000 for the rest of said term after the completion of said house; that said dwelling-house, after the expiration of thirty days from said March 10, and before its completion, was wholly destroyed by fire, and the defendant had due notice thereof, and owed the plaintiff $4000, which the plaintiff had demanded, &c. The answer contained a general denial, and alleged that the plaintiff applied to the defendant, on or about March 10, 1875, to insure his dwelling-house on the terms contained in a copy of a policy annexed to the answer; that the defendant caused to be prepared and signed a policy covering a risk to begin on March 10, and gave notice to the plaintiff that the policy was ready for delivery, and requested him to pay the premium and take the policy; both of which he neglected to do, and the policy had never been delivered. Trial in this

court, before *Lord*, J., who reported the case for the considera-
tion of the full court in substance as follows:

The plaintiff put in evidence an instrument, admitted to have
been executed by the authority of the defendant, appointing
Andrew B. Cobb an agent of said company for the transaction
of insurance business in Newton and vicinity, in this Common-
wealth, " with power as such agent to receive proposals for
insurance, to issue certificates binding the company during cor-
respondence only, on risks approved and submitted by him; to
collect moneys, and to receive and deliver policies signed by two
of the directors of said company, resident in the city of New
York, subject to the laws of said State of Massachusetts."

The plaintiff testified as follows: " I own a lot of land in
Watertown. I began building a house on it in January, 1875.
The house burned down on June 29, 1875, before it was fin-
ished. On March 10, 1875, Andrew B. Cobb came to my house
and asked me if I did n't want to insure the house. We made
a bargain then for insurance. He wanted to know how much I
wanted. I told him I meant to raise a mortgage of $5000 on
the property, and must insure for that amount. I asked him
what the rate would be, and he said one and a quarter per cent.
for three years. I told him how I wanted it applied. I said,
as the building was unfinished, I wanted $2000 from that day,
$2000 more in thirty days, and the balance of $1000 when the
house was completed. He asked me when it could be com-
pleted. I said I did n't know, and then turned to the carpenter,
who had contracted to build the house and was standing by us,
and asked him, and he said in three or four months. I then
took one of my business cards from my pocket, handed it to
Cobb, and told him when he got his policy ready to bring it to
my shop and I 'll settle it. He said all right. I heard nothing
more of the matter after that until I received this note: ' Bos-
ton, April 20, 1875. Geo. Myers, Esq. Dear Sir: Your policy
of insurance on house (new) on Boyd Street, of March 10, I
still hold. Please call when in town. Amount of premium
$73.50. Office hours from 9 to 1. Respectfully, A. B. Cobb.
I called at Cobb's office a day or two afterwards, but can't say
it was the next day. I went there to get the policy, and I had
enough money with me to pay the premium. I did n't find

Cobb. I also received this note: ' Boston, April 28, 1875. Geo. Myers, Esq. Dear Sir: Your policy I still hold; please call when in the city. I would call on you, but it takes almost one half day to do it, and you can call on me, I suppose, without spending much time; or, if more convenient, send me a check for the premium. Amount of premium, $73.50. Respectfully, A. B. Cobb.' I called at his office after receiving this note, but didn't find him. I didn't send him a check, because I kept no bank account. I called at his office more than a dozen times to get the policy, and had money with me to pay for it, but never found Cobb. I called in the forenoon between nine o'clock and one. I got tired of running to see him, and asked John Stackpole if he wouldn't get my policy for me. This was a week or ten days before the fire. I afterwards met Stackpole on the street, I think it was on the Monday before the fire, and asked him if he had got the policy. He said he had, but couldn't go back to his office then, as he was on his way to the cars, and would give it to me the next time I came in. The fire was on Tuesday, about 8 o'clock in the evening. I heard of it Wednesday morning, and came right in town to Cobb's office. I got there about 9 o'clock, and found Cobb there. I asked Cobb how it was about the policy, and he said it was cancelled a few days before. I asked him why he had not brought it to me. He said it was cancelled for non-payment of premium. I tendered him the amount of the premium then and there, and he refused to receive it. Stackpole came in while I was talking to Cobb." The plaintiff also testified that within a week after the fire, he tendered the amount of the premium to the defendant's general agent at the office of the company in Boston, and that the agent said the policy had been cancelled and sent to New York.

Charles R. Morson, the carpenter who had contracted to build the house, testified that he was present at the interview on March 10, between Cobb and the plaintiff, testified to by the plaintiff, and heard what was said; and, after stating it substantially as stated by the plaintiff, the witness continued as follows: " When Cobb asked when the building would be completed, Myers turned to me and asked me, and I said in three or four months. Cobb said he would insure it upon those terms.

Myers took out a card and gave it to Cobb; said that was his shop, and when Cobb got his policy ready, to bring it to him there and he would settle it. Cobb said he would make out a policy and bring it to him."

John Stackpole testified: "I have had a desk in the same office with Andrew B. Cobb since April 1, 1875. Cobb was an insurance agent. Afterwards, I understood, he was one of the assessors of Newton. He was not in the office much after he became assessor. Myers came to the office to get an insurance policy from Cobb. He came there several times and asked for Cobb. I had possession of the policy for Myers. I got it from Cobb. I can't recollect whether I asked him for it or he asked me to take it. He said, take the policy, give it to Myers and get the money. I put it in one of the drawers of my desk. I met Myers on the street, I think it was on the Saturday before the fire; I told him I had the policy, but was going out of town and could not stop then. He said he would come for it. I found Myers with Cobb at the office, the morning after the fire. It was quite early. I went to my desk to get the policy and hand it to Cobb that he might settle it. I opened the drawer in which I had put it, but it was not there. I asked Cobb if he had taken it, and he said he had. I think I told Cobb, when he handed me the policy, that I should leave it in my drawer and he could get it if Myers came in, and he was there. Myers never offered me any money." The plaintiff then rested his case; whereupon the counsel for the defendant asked whether the policy was put in evidence. The counsel for the plaintiff said that they had not put it in.

Upon the foregoing evidence the judge ruled that the plaintiff could not maintain his action, and directed the jury to return a verdict for the defendant. If the court should be of opinion that the foregoing evidence, upon any form of declaration, would warrant a verdict for the plaintiff, the case was to stand for trial, the plaintiff having leave to amend if necessary; otherwise, judgment to be entered on the verdict.

*L. S. Dabney*, for the plaintiff.

*F. E. Parker & F. C. Welch*, for the defendant.

ENDICOTT, J. The plaintiff does not seek to recover on the policy; and the evidence introduced by him fails to show any

oral contract to insure on March 10, or the issue of any certificate binding the company during correspondence. The insurance contemplated by the parties was by a policy to be issued by the defendant, and to be delivered to the plaintiff upon payment of the premium. *Markey* v. *Mutual Benefit Ins. Co.* 118 Mass. 178, 194, and cases cited. Such a policy was issued, and the defendant's agent notified the plaintiff that he had it. It remained in the agent's hands, or in Stackpole's, who was only authorized to deliver it on receiving the money, until a few days before the fire, which occurred June 29, when it was cancelled for non-payment of the premium. The presiding judge correctly ruled that the action could not be maintained.

*Judgment on the verdict.*