**STATE of Alaska, for the Use and Benefit of Sheldon WHITE, d/b/a White's Loader Service, Appellant,**

v.

**NEAL AND SONS, INC., et al., Appellees.**

**STATE of Alaska, for the Use and Benefit of James J. LEBERT, Appellant,**

v.

**NEAL AND SONS, INC., et al., Appellees.**

**No. 1364.**

Supreme Court of Alaska.

Oct. 15, 1971.

---

George M. Yeager, Fairbanks, for appellants.

William G. Ruddy and Robert B. Baker of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellee United Benefit Fire Ins. Co.

G. Kent Edwards, Atty. Gen., Juneau, Llewellyn R. Johnson and Richard P. Kerns, Asst. Attys. Gen., Anchorage, for appellee State of Alaska.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

CONNOR, Justice.

In this case plaintiff sued to recover for labor and material furnished for a state public works project. The question is what burden the plaintiff must carry initially in showing the validity of the payment bond and the authority of the agent who issued it.

In June of 1962, the State of Alaska awarded a public works contract to Arctic Contractors, Inc., for a highway construction project known as the Farmers Loop Road project near Fairbanks, Alaska. Appellants Sheldon White and James Lebert alleged that each had rented equipment to be used on that project to one of Arctic Contractors' subcontractors, defendant Neal and Sons, Inc. Claiming that they had not received payment for the rental of their equipment, appellants each filed separate suits under AS 36.25.020[1] against Neal and Sons, Arctic Contractors, the State of Alaska, and United Benefit Fire Insurance Company, as surety on the payment bond. These suits were consolidated for trial and remain consolidated on appeal.

Appellants alleged in their amended complaints that Arctic Contractors, Inc., had furnished a payment bond to the state with United Benefit Fire Insurance Company as surety.[2] United Benefit denied this allegation and also set forth the affirmative defenses that any bond purportedly written by or on behalf of United Benefit was issued without its authority, and that it had received no consideration for the issuance of such a bond. Trial was had only on the issue of whether James Kirwan, who had signed the payment bond as attorney-in-fact for United Benefit, had effectively bound the insurance company.

Carl Pederson, who was secretary-treasurer of Arctic Contractors at the time in question, testified on behalf of appellants that some time prior to the Farmers Loop Road project, Arctic Contractors had contacted Mr. Larry Dworkin of Fairbanks about getting a bond for another construction job that Arctic was at that time about to begin. Dworkin indicated that he could probably get the bond through James Kirwan in Anchorage, but after communicat-

---

1. AS 36.25.020 provides in part:
 " * * * a person having direct contractual relationships with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond has a right of action on the payment bond upon giving written notice to the contractor within 90 days from the last day on which the person performed labor or furnished material for which the claim is made. * * *
 "(c) A suit brought under this section shall be brought in the name of the state for the use of the person suing. * * * "

2. A payment bond as well as a performance bond is required for public contracts by AS 36.25.010:
 "(a) Before a contract exceeding $2,000 for the construction, alteration, or repair of a public building or public work of the state is awarded to a contractor, the contractor shall furnish to the state the following bonds, which become binding upon the award of the contract to that contractor:
 "(1) a performance bond * * *;
 "(2) a payment bond with a corporate surety qualified to do business in the state, or at least two individual sureties * * * for the protection of all persons who supply labor and material in the prosecution of the work provided for in the contract. * * * "

ing with Kirwan, Dworkin reported to Mr. Pederson that Kirwan had said he was not in a position to write the bond. Arctic obtained the bond for that job from another insurance agency.

About two weeks prior to the bidding on the Farmers Loop job, Kirwan personally called on Pederson and apologized for any inconvenience resulting from his previous inability to obtain a bond for Arctic Contractors. Kirwan stated that he was now ready to write a bond for any job Arctic might have, and inquired specifically about the upcoming Farmers Loop Road project. Kirwan inspected Arctic's equipment, inquired into the financial status of the officers of the corporation, and agreed that he could write the bond if Arctic were awarded the Farmers Loop Contract. Pederson checked with Larry Dworkin who stated:

> "There's no problem. They've got all their * * * paperwork * * * to write the bonds here in Alaska."

Pederson testified, "so we went ahead and made the bid."

A payment bond for the Farmers Loop Road project was executed June 6, 1962, in the amount of $656,210.50, by Arctic Contractors, Inc., as principal, and United Benefit Fire Insurance Company, by James M. Kirwan, attorney-in-fact, as surety. The corporate seals of both Arctic Contractors, Inc., and United Benefit Fire Insurance Company appear to have been impressed on the bond.[3] James Kirwan also signed a Resident Agent's Affidavit on June 6, 1962. In this affidavit, Kirwan stated that he was a duly appointed agent for United Benefit Fire Insurance Co., an Omaha, Nebraska, corporation, authorized and qualified to do business in the State of Alaska.

Kirwan received two checks totaling $2,500 from Arctic Contractors in part payment for the payment bond and a performance bond. Both checks were made payable to the order of "James Kirwin". Kirwan endorsed the checks personally, and presumably received the $2,500. There was no evidence that United Benefit received any part of this $2,500, or any other payment for the bond.

On August 16, 1962, the State of Alaska Department of Highways wrote to Arctic Contractors informing them that they were behind schedule on the Farmers Loop job. Apparently United Benefit received a copy of this letter. Mr. Pederson stated:

> "So that's the time that United Benefit wrote right back to the state and to us telling us that they were * * * not bonding us, that they had—something about they'd never received the premium."

The state subsequently required Arctic to furnish another bond, and on March 8, 1963, Arctic Contractors executed another payment bond, with Mr. Pederson and another officer of Arctic Contractors signing individually as sureties.[4]

Appellants attempted without success to introduce into evidence two letters by which they hoped to prove that United Benefit had authorized James Kirwan to act as its agent. They were unable to authenticate the letters, however, and the court did not admit them into evidence.[5] Appellants rested their case. United Benefit moved for a dismissal and the court granted its motion, stating:

> " * * * the plaintiff[s] should have the burden of proving the effectiveness and validity of this bond before they can

---

3. An electrostatic copy of the payment bond was introduced into evidence. The corporate seals are somewhat difficult to read, but it does appear that the seal of United Benefit was impressed on the payment bond.

4. The record does not clearly indicate whether a new performance bond was

also executed. Arctic Contractors did, however, assign certain property to the State "for the purpose of securing performance by Arctic Contractors, Inc., of its obligations."

5. Appellants do not complain of this ruling.

contend against it * * *. I believe those proofs haven't been made here." This appeal followed.

The sole issue presented by this appeal is whether the superior court properly concluded that appellants had the burden of proof as to the validity of the bond, including proof of James Kirwan's authority to bind United Benefit Fire Insurance Company.

Appellants first argue that United Benefit had the burden of proof as to the issue of agency because the insurance company pleaded Kirwan's lack of authority as an affirmative defense. We disagree. Civil Rule 8(c) provides that certain matters must be pleaded by a defendant affirmatively.[6] But this rule reflects the burden of proof which, as a matter of substantive law, is normally placed upon the defendant. To determine which party has the burden of proof as to a particular issue we must look not to the manner in which the defendant happened to plead an issue, but to the substantive law.[7]

As a general rule, the party who seeks to bind a principal with acts of a purported agent bears the burden of proving the fact of agency.[8] Further, as appellee points out in its brief, a person who deals with another, knowing that the other is acting as an agent, and who fails to inquire into the extent of the delegated authority, may be held to deal at his peril.[9] We believe, however, that where a laborer or materialman brings suit on a payment bond pursuant to AS 36.25.020, a different rule as to burden of proof on the agency issue is required.

The general rule that places the burden of proof on the person seeking to bind the principal with acts of a purported agent may be justified in a controversy between an insured and his insurer. The insured who obtains insurance from a purported agent is usually in a position to inquire into the extent of that agent's authority. A person furnishing labor or materials on a state public works project, however, does not deal directly with the surety company or its purported agent. In many cases he does not even deal directly with the prime contractor who obtained the bond. He is in a relatively poor position to inquire into whether an agent with whom the prime contractor dealt had authority to bind the insurance company appearing as surety on the bond. The insurance company has far better access to the facts surrounding the nature of the purported agency relationship than does a laborer or materialman on a state public works project.

---

6. Alaska's Civ.R. 8(c) provides in part: "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.*" (Emphasis supplied).

7. In addition to pleading lack of agency as an affirmative defense, United Benefit also denied in its answer that it was surety on the bond. 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1271, at 304 (1968), states: " * * * a pleader, in order to avoid waiving an otherwise valid defense, often will decide to set up affirmatively matter that technically may not be an affirmative defense * * *. Normally, he will not be penalized for exercising caution in this fashion."
1A Barron & Holtzoff, Federal Practice and Procedure, § 279, at 164 (Wright ed. 1960), states: "Analytically it may be supposed that * * * the burden of proof is a matter of substance."

8. Sturm v. Green, 398 P.2d 799 (Okla. 1965); Coen v. American Surety Co. of New York, 120 F.2d 393, 397 (8th Cir. 1941); 19 G. Couch, Cyclopedia of Insurance Law § 79:322, at 623 (2d ed. 1968).

9. Brown v. Laird, 134 Or. 150, 291 P. 352, 356 (Ore.1930); Cauman v. American Cred. Indemnity Co. of New York, 229 Mass. 278, 118 N.E. 259, 261 (Mass. 1918).

The purpose of AS 36.25.010 and AS 36.25.020 is to protect persons who furnish labor or material for a state public works project from the risks of nonpayment. In exchange for providing such protection, the state is assured that material and labor will be readily furnished for its projects. Persons who furnish labor and materials for the state's projects do so in reliance on the existence of a valid payment bond.

In United Bonding Insurance Company v. Castle, 444 P.2d 454 (Alaska 1968), we held that the award of a state public works contract and the making of payments under that contract raise a presumption that the required bond has been furnished, thus, a laborer or materialman should not have to inquire into the validity of the bond before furnishing labor or materials. Such a burden of inquiry would surely result in a reluctance to readily furnish materials or labor. To avoid this reluctance and the possible delays caused thereby, the state has provided special protections to laborers and materialmen in AS 36.25.010 and AS 36.25.020.

Apart from the problem presented when one is asked to furnish labor or materials on a state project, gathering proof of authority of the agent may also be difficult at a later time. Where the sums claimed in a suit under AS 36.25.020 are relatively small, the expenses of discovery concerning the agency relationship may render it uneconomical to pursue the claim. This would clearly undermine the purpose of the statutes providing laborers and materialmen a specific right of recovery on the payment bond. We believe the purpose of the statutes is best served by placing the burden of proof as to agency on the insurance company in cases such as the one before us, particularly in light of the insurance company's far superior access to the facts surrounding the agency.

 In the case at bar, appellants introduced into evidence a certified copy of a payment bond which, on its face, appeared to have been executed by an authorized agent of United Benefit Fire Insurance Company. James Kirwan apparently was in possession of a corporate seal of that company and had filed a resident agent's affidavit which became a part of the construction contract. The acting commissioner of highways for the State of Alaska approved the bond. We hold that this evidence was sufficient to raise a rebuttable presumption that the bond was valid and that United Benefit was bound as surety.

We are not saying that appellants have necessarily proved that James Kirwan had actual or apparent authority to bind United Benefit. We are merely holding that appellants' evidence raises a presumption that the bond was executed as it appears to have been executed. The burden of going forward with the evidence is now upon United Benefit. It can meet this burden by showing that James Kirwan did not have authority to act on its behalf, or that he was not clothed with apparent authority to so act.

The order of dismissal is reversed and the case remanded for further proceedings.