**IMPERIAL MANUFACTURING ICE COLD COOLERS, INC., an Oregon Corporation, Appellant,**

v.

**Clifton SHANNON, a/k/a Clif Shannon, individually and d/b/a Arctic Construction Enterprises, State Farm Fire & Casualty Co., and Lower Kuskokwim School District, Appellees.**

No. S–11045.

Supreme Court of Alaska.

Nov. 19, 2004.

Calvin R. Jones, Jones & Colver, LLC, Anchorage, for Appellant.

Saul R. Friedman, Matthew Singer, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellee Lower Kuskokwim School District.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

A subcontractor asks this court to hold that the Little Miller Act provides it with a private right of action through which it can sue a school district for failing to ensure that the bonding requirements of the act were met. Because we can find no indication that the legislature intended to impose such liability on public entities, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

The Lower Kuskokwim School District contracted with Clifton Shannon, d/b/a Arctic Construction Enterprises, to deliver, assemble, and install two two-bedroom panel houses in Tooksook Bay and Kwillingok. The contract acknowledged that Shannon had provided no bonding under the Little Miller Act, AS 36.25.010.[1] Shannon purchased the house packages from Imperial Manufacturing Ice Cold Coolers, Inc., and Imperial delivered them to the villages. Shannon did not pay Imperial.

Imperial sued, among others, the school district on the theory that the school district had failed to require that Shannon obtain a payment bond and thereby had breached duties owed to Imperial. On cross-motions for summary judgment, the superior court granted the school district's motion and ruled that AS 36.25.010 does not provide a private cause of action against a political subdivision. As this is the ruling that is challenged on appeal, we assume for present purposes that AS 36.25.010 applied to the contract.[2] A Civil Rule 54(b) partial final judgment was entered from which Imperial appeals.

## III. DISCUSSION

Alaska Statute 36.25.010 requires contractors who are awarded public construction contracts to furnish payment bonds for the protection of those who supply labor and materials. The remedy of a supplier who is not paid is set forth in AS 36.25.020. Under this section the supplier may sue on the bond in the name of the political subdivision for

1. AS 36.25.010(a) provides:

   Except as provided in AS 44.33.300, before a contract exceeding $100,000 for the construction, alteration, or repair of a public building or public work of the state or a political subdivision of the state is awarded to a general or specialty contractor, the contractor shall furnish to the state or a political subdivision of the state the following bonds, which become binding upon the award of the contract to that contractor:
   (1) a performance bond with a corporate surety qualified to do business in the state, or at least two individual sureties who shall each justify in a sum equal to the amount of the bond; the amount of the performance bond shall be equivalent to the amount of the payment bond;
   (2) a payment bond with a corporate surety qualified to do business in the state, or at least two individual sureties who shall each justify in a sum equal to the amount of the bond for the protection of all persons who supply labor and material in the prosecution of the work

provided for in the contract; when the total amount payable by the terms of the contract is not more than $1,000,000, the payment bond shall be in a sum of one-half the total amount payable by the terms of the contract; when the total amount payable by the terms of the contract is more than $1,000,000 and not more than $5,000,000, the payment bond shall be in a sum of 40 percent of the total amount payable by the terms of the contract; when the total amount payable by the terms of the contract is more than $5,000,000, the payment bond shall be in the sum of $2,500,000.

2. The school district contends that AS 36.25.010 did not apply, arguing that the contract was a contract of supply rather than for the construction of a public building. The district relies on the definition of "public construction" defined in AS 36.95.010(3) as the "on-site ... erection of buildings." The district contends that the $100,000 threshold of AS 36.25.010 was not met here because the on-site construction component of the contract was less than $100,000.

the use of the claimant.[3]   Alaska Statute 36.05.035(2), a section of the Little Davis Bacon Act concerning wages and hours of labor on public construction projects, provides that political subdivisions shall verify that the bonding requirements of AS 36.25 have been met.[4]

■ Imperial argues on appeal that AS 36.25.010 should be construed to provide an implied private right of action in favor of an unpaid supplier against a political subdivision that fails to require a contractor to purchase a payment bond.   It also contends that the duty expressed in AS 36.05.035 to verify whether bonding requirements have been met should be enforceable by a civil claim brought by a party in its position.   The school district argues that no right of action against a political subdivision by entities with which it has no contractual relationship is expressed either in the Little Miller Act or in AS 36.05.035, and that none is implied.

■ Subcontractors and suppliers cannot lien public projects.[5]   They thus would be dependent on the financial solvency of prime contractors and might be reluctant to supply labor or material to public projects were there not an alternative remedy.   The Little Miller Act was designed to address these problems.

The purpose of the statute is:

> to protect persons who furnish labor or material for a state public works project from the risks of nonpayment.   In exchange for providing such protection the state is assured that material and labor will be readily furnished for its projects. Persons who furnish labor and material for the state's projects do so in reliance on the existence of a valid payment bond.[6]

3.   AS 36.25.020 provides:

(a) A person who furnishes labor or material in the prosecution of the work provided for in the contract for which a payment bond is furnished under AS 36.25.010 and who is not paid in full before the expiration of 90 days after the last day on which the labor is performed or material is furnished for which the claim is made, may sue on the payment bond for the amount unpaid at the time of the suit.

(b) However, a person having direct contractual relationships with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond has a right of action on the payment bond upon giving written notice to the contractor within 90 days from the last date on which the person performed labor or furnished material for which the claim is made.   The notice must state with substantial accuracy the amount claimed and the name of the person to whom the material was furnished or for whom the labor was performed.   The notice shall be served by mailing it by registered mail, postage prepaid, in an envelope addressed to the contractor at any place where the contractor maintains an office or conducts business, or the contractor's residence, or in any manner in which a peace officer is authorized to serve summons.

(c) A suit brought under this section shall be brought in the name of the state or the political subdivision of the state for the use of the person suing in the court with jurisdiction.   A suit under this section is subject to AS 08.18.151.   A suit may not be started after the expiration of one year after the date of final settlement of the contract.   The state or political subdivision of the state is not liable for costs or expenses of the suit.

4.   AS 36.05.035 provides:

Upon awarding a public construction contract, the state or a political subdivision of the state shall
(1) immediately notify the commissioner of labor and workforce development of the amount of the contract, the effective date of the contract, the identity of the contractor and all subcontractors, the site or sites of construction, and provide a project description; and
(2) verify that the bonding requirements of AS 36.25 have been met and that the requirements of AS 08.18 have been met.

5.   *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) ("But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation.   They cannot acquire a lien on public buildings, and as a substitute for that more customary protection, the various statutes were passed which require that a surety guarantee their payment."); *Univ. of Alaska v. Simpson Bldg. Supply Co.*, 530 P.2d 1317, 1322 (Alaska 1975) ("Although the question has not yet been decided by this court, the weight of authority in other jurisdictions holds that there can be no mechanics' or materialmen's liens on property owned by the public and used for public purposes.").

6.   *SKW/Eskimos, Inc. v. Sentry Automatic Sprinkler Co.*, 723 P.2d 1293, 1297 (Alaska 1986) (quoting *State v. Neal & Sons, Inc.*, 489 P.2d 1016, 1020 (Alaska 1971)).

Since the Little Miller Act is modeled on the federal Miller Act, we look to cases construing the federal act for guidance in interpreting the Alaska statute.[7] The Alaska statute, "like the federal Miller Act, is remedial in nature and is to be liberally construed to effectuate its purpose."[8]

We conclude that the superior court was correct in granting summary judgment to the school district. To accept Imperial's claim would be contrary to the premise on which the Little Miller Act is based, which is that neither the government nor government property may be charged by those with whom the government has no contractual relationship. We believe that if the legislature had intended to impose government liability—in effect as the school district puts it, to require public entities "to pay twice for a public project"—this intention would have been expressed because it is a significant variation from the existing norm.

This conclusion is supported by the rule prevailing in cases decided under the federal Miller Act that the government is not liable for negligent failure to insist that its contractors furnish Miller Act payment bonds.[9] As one court has put it:

The purpose of the Miller Act is to ensure that subcontractors have some remedy if they are not paid, since on public projects they cannot protect themselves by filing a lien. The Act, however, creates no affirmative rights against the government. The government does not recognize or deal with the sub-contractor and has no obligation to him for work performed or materials furnished. A plaintiff's sole remedy under the Miller Act is to institute suit against the prime contractor or the surety.[10]

In another case, *Arvanis v. Noslo Engineering Consultants, Inc.*, the court stated:

The Act grants a very narrow and specific right to those in appellants' position: the right to sue on the bond (if there happens to be one) "in the name of the United States for the use of the person suing." 40 U.S.C. § 270b(b). (The United States is thus aligned on the plaintiff's rather than the defendants' side by the equation, providing an additional reason for concluding that the United States cannot properly be a defendant in a Miller Act suit.)....
There does seem to be a gap in the statute; there is no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement. However, this is not a gap that we can fill with a remedy—especially in view of the very narrow remedy actually granted by the statute.[11]

Under Alaska's act, as under the federal act, the suit must be brought in the name of the government entity that owns the project.[12] It would be unusual for an act requiring suits to be brought in the name of a government entity to permit such suits to be brought *against* the government entity. Again, if such was intended one would expect to see the intention expressed.

Imperial argues that Alaska should not follow Miller Act precedent in this area since the federal Miller Act does not contain an explicit mandate requiring the government to verify the existence of required bonding, whereas AS 36.05.035 explicitly requires such verification. We question the premise of this argument. In *Arctic Contractors, Inc. v. State*, we stated that the Miller Act did impose a burden on the contracting officer to verify bonding.[13] We further noted that al-

7. *State ex rel. Palmer Supply Co. v. Walsh & Co.*, 575 P.2d 1213, 1218 (Alaska 1978).

8. *SKW/Eskimos*, 723 P.2d at 1297.

9. *Hardaway Co. v. U.S. Army Corps of Eng'rs*, 980 F.2d 1415 (11th Cir.1993); *Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir.1992); *Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287 (7th Cir.1984); *4–Star Constr. Corp. v. United States*, 6 Cl.Ct. 271 (1984); *Baudier Marine Elecs. Sales & Serv., Inc. v. United States*, 6 Cl.Ct. 246 (1984), *aff'd*, 765 F.2d 163 (Fed.Cir.1985).

10. *United States ex rel. Fred's Plumbing & Heating, Inc. v. Small Bus. Admin.*, 807 F.Supp. 675, 677–78 (D.Colo.1992) (citations omitted).

11. 739 F.2d at 1290.

12. AS 36.25.020(c).

13. 564 P.2d 30, 39 (Alaska 1977), *disapproved of on different grounds by Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984).

though less explicit, there was a similar duty implicit in the Little Miller Act:

> Statutes such as the Miller and Capehart acts put the burden on the contracting officer to determine the vitality of the surety. Although absent from AS 36.25.010(a)(1), that burden can be read into the language "the contractor shall furnish to the state ... a performance bond with a corporate surety qualified to do business in the state...."
>
> We hold that the burden was on the State to verify the bonds.[14]

Consistent with the observations in *Arctic Contractors*, we think it is difficult to say that the contracting officer under the federal Miller Act has merely a passive role with respect to bonding compliance. It is therefore debatable whether the textual differences on which Imperial relies should lead to differing results.

Further, we believe that the duty-to-verify statute, AS 36.05.035, adds little to this case. This case is not about the negligent failure of a public entity to verify that a Little Miller Act contractor had obtained the bonds required under the act. The contract specifically exempted the contractor from compliance. If this was wrong, it was wrong because the school district either intentionally, negligently, or reasonably believed that the Little Miller Act did not apply to the contract. The question thus is not as to liability for failure to verify but as to liability of a public entity for exempting a project from Little Miller Act coverage that properly should have been covered. Given these circumstances, we believe that liability, if it exists, must be assessed under the Little Miller Act.

*Arctic Contractors* is a case that arose under the Little Miller Act at a time before the duty-to-verify provision of AS 36.05.035(2) was effective.[15] As already noted, this court held that a duty to verify was implied by the language of the act.[16] The facts in *Arctic Contractors* were that the state had withheld progress payments from the prime contractor after the state discovered that the prime contractor's bonds were invalid. The question was whether this withholding of progress payments was justified.[17] Using a standard that "[t]he right to withhold progress payments is limited to circumstances which clearly warrant it," we held that the state was not justified in withholding progress payments in order to protect itself against claims by laborers and materialmen.[18] In support of this conclusion we stated:

> Under the majority rule, a public body which fails to obtain bonds as required by law is not thereby liable to materialmen and laborers. This issue has not been ruled upon in Alaska, and we do not pass upon it at this time. It would appear, however, that the first reason advanced by the State [to protect itself against claims by laborers and materialmen arising from an unbonded contractor] for the withholding is not a circumstance which clearly warrants the withholding.[19]

*Arctic Contractors* thus holds that a public entity's violation of its duty implied in the Little Miller Act to ensure bonding for public construction does not clearly give rise to liability, and suggests that a rule of nonliability should apply. We agree with the majority rule of nonliability stated in the first sentence in the above excerpt from *Arctic Contractors*. It is in accord with the case law construing the federal Miller Act,[20] substantial case law from our sister states,[21] and

---

14. *Id.* The court's observation concerning the Miller Act duty was a reference to the provisions of that act requiring a contractor to furnish to the federal contracting officer "[a] payment bond with a surety or sureties satisfactory to such officer." *Id.* (quoting 40 U.S.C. § 270a(a), which is now found at 40 U.S.C. § 3131(b)(2)).

15. AS 36.05.035 became effective in 1972.

16. *Arctic Contractors*, 564 P.2d at 39.

17. *Id.* at 43.

18. *Id.* at 43–45.

19. *Id.* at 43.

20. *See supra* note 9.

21. A majority of states that do not have explicit statutory provisions that expressly provide for the liability of public entities for failing to ensure that the contractor secures proper bonding have declined to find liability by implication. "Courts interpreting bond statutes that do not specifically

our belief as expressed above that if the legislature had intended to impose government liability for Little Miller Act violations that intention would have been expressed.

## IV. CONCLUSION

For these reasons the judgment is AFFIRMED.

FABE, Justice, not participating.

provide for liability have often construed them strictly. Without a clear expression of legislative intent to render government agencies subject to suit from subcontractors and materialmen, such courts are often reluctant to impose liability on the agencies." George E. Powell, Jr., Annotation, *State or Local Government's Liability to Subcontractors, Laborers, or Materialmen for Failure to Require General Contractor to Post Bond*, 54 A.L.R. 5th 649 (1997). *See e.g., Flori Corp. v. Yellow Rose Dev. & Constr., Inc.*, 184 Ariz. 540, 911 P.2d.546 (App.1995); *O & G Indus., Inc. v. Town of New Milford*, 229 Conn. 303, 640 A.2d 110 (1994); *Emulsicoat, Inc. v. City of Hoope-* ston, 99 Ill.App.3d 835, 55 Ill.Dec. 176, 425 N.E.2d 1349 (1981); *ABC Supply Co. v. City of River Rouge*, 216 Mich.App. 396, 549 N.W.2d 73 (1996); *Cassady–Pierce Co. v. Spagnol*, 160 Pa. Cmwlth. 666, 635 A.2d 746 (1993); *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223 (R.I.1996); *City of Corpus Christi v. Acme Mech. Contractors, Inc.*, 736 S.W.2d 894 (Texas App.1987). But at least one court has reasoned that public entities have a duty to ensure that proper bonding is secured and that liability can arise from a breach of this duty. *Palm Beach County v. Trinity Indus., Inc.*, 661 So.2d 942 (Fla.App.1995).