**Zeynep MESTA, et al., Plaintiffs,**

v.

**ALLIED VAN LINES INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 87–3051–C.**

United States District Court, D. Massachusetts.

Aug. 30, 1988.

Albert S. Robinson, Lisa L. Foster, Grindle, Robinson & Kertzman, Wellesley, Mass., for plaintiffs.

Joseph B. Bertrand, Murphy, Demarco & O'Neill, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action was brought by the plaintiff to recover damages resulting from injuries to their property. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332. The matter is now before the Court on the defendant's motion to dismiss.

### I. *Background*

The facts, as alleged by the plaintiff, are as follows. The plaintiffs contracted with a company called Eurovan to ship their personal belongings from Turkey to Massachusetts. The defendant (Allied) was hired to pick up the goods once they arrived in Boston and to deliver the goods to the plaintiff's home. The plaintiff alleges that Allied, in turn, hired Wakefield Distribution Systems to carry out Allied's duties.

On arrival in the United States, the goods were inspected by the U.S. Customs Service, which has stated that no damaged goods were noticed during the inspection. The plaintiff alleges that, after inspection, Wakefield Distribution disregarded specific instructions and took the goods out of the

---

original shipping container. Upon delivery, the plaintiff claims, the goods were damaged, and a number of items were missing. The plaintiff filed claims with Allied, but Allied has not contacted the plaintiff about the matter for nine months. The plaintiff then brought this suit against Allied alleging breach of the contract of carriage (Count One), negligence (Count Two), unfair and deceptive acts and practices (Count Three), intentional infliction of emotional distress (Count Four), negligent infliction of emotional distress (Count Five), and injury to property under 49 U.S.C. § 11707 (Count Six).

## II. *Discussion*

The defendant first argues that the breach of contract claim should be dismissed because there was no contract between Allied and the plaintiff. The defendant contends that Wakefield Distribution was an independent carrier, rather than an agent of Allied, as alleged by the plaintiff. On a motion to dismiss, however, the Court must accept all of the plaintiff's allegations as true. Therefore, it must be assumed, for the purposes of this motion, that Wakefield Distribution was the defendant's agent. As Allied's agent, Wakefield Distribution would have had the authority in certain circumstances to enter into a contract with the plaintiff on behalf of Allied. *See Cauman v. American Credit Indemnity Co.*, 229 Mass. 278, 283, 118 N.E. 259 (1918) (noting that the principle is responsible for the acts of his agent within the apparent scope of the agent's authority). As such, one cannot say that, as a matter of law, there was no contract between Allied and the plaintiff.

The defendant's principle argument is that federal law supercedes state law regarding the liability of an interstate carrier for loss or damage to goods. An interstate carrier's liability for loss or damage to goods under federal law is set out in the Carmack Amendment to the Interstate Commerce Act. What is commonly referred to as the Carmack Amendment (originally 49 U.S.C. § 20(11)) is now codified at 49 U.S.C. §§ 11707, 10730, 10103. Section 11707 states in relevant part:

A common carrier ... subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or a bill of lading for property it receives for transportation under this subtitle.... That carrier ... and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the recieving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States....

Section 10103 provides in pertinent part:

Except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law.

Allied, through its agent, Wakefield Distribution, was a "delivering carrier" under § 11707. As such, the defendant is potentially liable under 49 U.S.C. § 11707 for the damage to the plaintiff's property. The principle issue is whether the Carmack Amendment preempts state law.

Congressional intent to preempt state law in a specific area can be evidenced by comprehensive legislation in that area. *Louisiana Public Service Comm'n v. F.C.C.*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). In the area of an interstate carrier's liability for loss of, or damage to, property, "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject and supersede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–6, 33 S.Ct. 148, 152, 57 L.Ed. 314 (1913). See also *New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 988, 97 L.Ed. 1500 (1953); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1412–13 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Air Products & Chem-*

*icals v. Illinois Central Gulf R.R. Co.*, 721 F.2d 483, 486 (5th Cir.1983), *cert. denied* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). It is clear that in enacting the Carmack Amendment, Congress intended to provide a uniform set of rules governing the liability of carriers. *Adams Express,* 226 U.S. at 506, 33 S.Ct. at 152; *Air Products,* 721 F.2d at 486; *W.D. Lawson & Co. v. Penn Central Co.,* 456 F.2d 419, 422–23 (6th Cir.1972). Allowing shippers to sue carriers under the myriad of potentially applicable state laws would undoubtedly frustrate Congress' intent. As such, most courts that have addressed the issue have held · that the Carmack Amendment preempts state law in the area of interstate carrier's liability under a bill of lading. *Hughes*, 829 F.2d at 1414.

The only federal court to hold otherwise is the Court of Appeals for the Tenth Circuit. *See Reed v. Aaacon Auto Transport, Inc.,* 637 F.2d 1302, 1304–5 (10th Cir. 1981) (holding that the Carmack Amendment does not preempt all state law rules applicable to carrier liability). The Tenth Circuit's position, however, is contrary to statements made by the United States Supreme Court, as noted above, and has been directly criticized by the Court of Appeals for the Seventh Circuit. See *Hughes*, 829 F.2d at 1415. And finally, the Court of Appeals for the First Circuit has suggested that this circuit adheres to the majority view. *See Intech, Inc. v. Consolidated Freightways, Inc.,* 836 F.2d 672, 677 (1st Cir.1987) (noting that the Carmack Amendment provides the exclusive remedy for damages incidental to the carrier's improper refusal to unload goods). This Court therefore adopts the majority view, and holds that the Carmack Amendment provides the exclusive remedy for damages resulting from loss of, or injury to, goods transported by an interstate common carrier subject to the statute.

In this case, Counts One, Two, Four, and Five are state law claims for direct or consequential injuries arising from the loss of, or damage to, property carried under a bill of lading. As such, these claims are preempted by the Carmack Amendment, and should be dismissed.[1] The plaintiff's ch. 93A claim is another matter. The defendant's liability under c. 93A is based not on loss of property, but on the defendant's actions in investigating and responding to the plaintiff's claim. Such activities were not undertaken in the course of transporting goods, and are thus not within the scope of the Carmack Amendment. *See Sokhos v. Mayflower Transit,* 691 F.Supp. 1578 (D.Mass.1988) (holding that the the Carmack Amendment does not preempt state law actions based on the carrier's improper handling of the plaintiff's claims for damage to goods); *American Transfer and Storage Co. v. Brown,* 584 S.W.2d 284 (Texas Civ.Ct.App.1979), *rev'd on other grounds,* 601 S.W.2d 931 (1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (holding that the Carmack Amendment does not preempt a claim under the Texas Deceptive Trade Practices Act for misrepresentations made prior to the contract of carriage). The 93A claim is not, therefore, preempted by federal law.[2] Since the majority of the plaintiff's state law claims are preempted, this Court need not reach the other issues raised by the defendant regarding the sufficiency of those state law claims.

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

---

**1.** The defendant, for some reason, moves to dismiss only Count Three on preemption grounds. It is clear, however, that these other counts should be dismissed for this reason also. In addition, though the defendant did not move to dismiss Count Two, the Court may dismiss that Count *sua sponte. See Literature, Inc. v. Quinn,* 482 F.2d 372, 374 (1st Cir.1973) (noting that a district court may dismiss a claim on its own motion where the plaintiff is given an opportunity to address the issue). The plaintiff was given ample opportunity to address the issue of preemption in this case.

**2.** The parties do not address the issue of whether the alleged actions of the defendant violate c. 93A. Accordingly, the Court declines to address this issue at this stage. The only issue decided is whether the c. 93A claim is preempted.

Counts One, Two, Four, and Five of the plaintiff's complaint are dismissed for failure to state a claim.

The defendant's motion to dismiss Count Three for failure to state a claim is denied.