URBAN ELECTRICAL COMPANY, INC., Plaintiff,

v.

CABLE INDEX, Defendant.

Phil ORZELL d/b/a Phil Orzell Associates, Defendant and Third–Party Plaintiff,

v.

CONDUCTORES LATINCASA S.A. de C.V., Third–Party Defendants.

Civ. A. No. 88–0789–MA.

United States District Court, D. Massachusetts.

March 5, 1990.

Jerrold A. Olanoff, Charles A. Plunkett, Corwin and Corwin, Boston, Mass., for plaintiff.

Paul E. Mitchell, Mark R. Segalini, Morrison, Mahoney & Miller, Miriam Goldstein Altman, Paul E. Troy, Sherburne, Powers & Needham, Boston, Mass., for defendant Shaughnessy & Ahern Co.

Patricia S. Nelson, Lexington, Mass., Thomas E. Goode, Hale, Sanderson, Byrnes & Mort, Boston, Mass., for defendants.

Frank C. Huntington, Widett, Slater & Goldman, P.C., Boston, Mass., for third-party defendants Conductores Latincasa.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This case comes before me on a motion for summary judgment. Fed.R.Civ.P. 56. The movant, Consolidated Rail Corp. ("Conrail") seeks to extricate itself from a multi-party suit in which it is involved as a third party defendant. The non-movant, Phil Orzell Associates ("Orzell") is both a defendant and a third party plaintiff.

The basic facts are not in dispute. The primary plaintiff in this action is Urban Electrical Company ("Urban"). At all relevant times, it was a subcontractor on a project sponsored by the Massachusetts Bay Transportation Authority. In early 1985, Urban placed an order with Orzell for heavy electrical cable. Orzell was a representative for various manufacturers of wire, transformers and other electrical equipment. Orzell contacted Cable Index Company ("Cable Index"), the general agent in the United States for Latinoamericana de Cable S.A. de C.V. ("Latincasa"), a cable manufacturing company in Mexico. Latincasa agreed to ship to Urban the desired quantity and type of cable.

The cable was packed in Mexico and was shipped into the United States. In Laredo, Texas, the cable was loaded onto "piggy back" trailers and transported by Conrail to its depot in Allston, Massachusetts. The cable arrived on or about March 3, 1985. The shipment was met by Shaughnessy & Ahern ("S & A"), a storage firm located in Boston. Before removing the cable to their warehouse, S & A employees noticed that some of the cable was unsecured, causing it to move about in its container and become damaged. Having duly noted the condition of the shipment, S & A moved the cable to its facility, where most of it remains today.

Subsequent events revealed that the cable was defective and unusable. There is much dispute about whether the defect resulted from the actual manufacturing or from improper packing and shipping. Additionally, if improper packing and shipping is to blame, the question remains whether Conrail or Latincasa is responsible. In any event, Urban sued both Orzell and Cable Index for the damages Urban suffered as a result of the defect. Urban seeks to recover, among other things, lost profits, extra labor charges, replacement cable costs and late penalties. Orzell, in turn, has brought suit against Conrail, Latincasa and S & A seeking, essentially, indemnity for whatever damages it is adjudged to owe. In its complaint, Orzell contends that Conrail and/or Latincasa were negligent in the packing and shipment of the cables.

In its motion for summary judgment, Conrail offers several specific grounds which, taken alone or together, it believes justify dismissal of Orzell's action. Basically, it contends that Orzell's claims are pre-empted and barred by the Carmack Amendment. 49 U.S.C. § 11707. More specifically, it asserts that Orzell did not file a claim for damages with Conrail within the statutorily allotted time period and, therefore, it cannot recover damages. Moreover, Orzell has failed to produce a bill of lading which precludes it from even bringing suit. Finally, Conrail claims that, as a matter of fact, Orzell has not produced any evidence that goes to prove the damage to the cable was caused by Conrail.

Orzell has staked its entire opposition to summary judgment on the proposition that its cause of action is not even covered by the Carmack Amendment and thus it is not precluded in any way from bringing suit. It essentially concedes that it has not satisfied the dictates of the statute. Specifically, it acknowledges that it did not file a claim with Conrail at any time; additionally, it does not now, nor did it ever, have possession of the bill of lading. Instead,

Orzell argues that it was not a party to the shipment contract and that the damages it seeks are unrelated to the actual shipment. Moreover, since there is a dispute about the cause of the defective cable, summary judgment is not warranted.

Summary judgment is appropriate when, having examined the record in its entirety, there exists no genuine issue of material fact. Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988) (citations omitted). When faced with a summary judgment motion, the non-moving party must go beyond mere allegations in his pleading and must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 895 (citations omitted).

It seems clear that the first step in addressing Conrail's motion must be to determine whether the Carmack Amendment applies to Orzell's suit, for if it does, the undisputed facts weigh heavily in favor of summary judgment. Conversely, if the Amendment is inapplicable, the propriety of dismissal is somewhat in doubt.

The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 and as part of the Hepburn Act, ch. 3591, 34 Stat. 584 (1906) and was codified at 49 U.S.C. § 20(11). *Underwriters at Lloyds of London v. North American Van Lines,* 890 F.2d 1112, 1115 (10th Cir.1989) (en banc). It was subsequently recodified in 1978 as 49 U.S.C. § 11707. *See* 92 Stat. 1337 (1978). The Amendment deals with "the familiar and historic subject of carrier liability for goods lost or damaged in shipment." *Underwriters at Lloyds,* 890 F.2d at 1115.

Regulations promulgated by the Interstate Commerce Commission pursuant to the Carmack Amendment prohibit rail carriers from voluntarily making payments for loss, damage, injury or delay to cargo unless a claim is made in writing. 49 C.F.R. § 1005.1 (1990). Moreover, it is well established that carriers may include in their bills of lading a requirement that a claim for damages must be filed no more than nine months after the goods are delivered. 49 C.F.R. § 1005.2 (1990). It is general practice among carriers to include in a standard bill of lading section 2(b) of the Uniform Straight Bill of Lading, which sets forth the nine month requirement.[1] It is undisputed that section 2(b) was a part of the bill of lading for this shipment of cable.

The scope of the Carmack Amendment is quite broad. "There is no doubt that negligent loss or damage to goods was included within the broad subject matter which the Carmack Amendment was intended to codify." *Underwriters at Lloyds,* 890 F.2d at 1117. However, there is a provision in the Amendment, codified as 49 U.S.C. § 10103 which states, essentially, that the federal statutory remedies for carrier negligence coexist with state and common law remedies.

A review of the case law interpreting the Amendment, however, reveals that the Supreme Court and the circuit courts have all read this provision so narrowly, it is considered a nullity. Indeed, the Tenth Circuit, after a scholarly and comprehensive review of this case law, concluded "the Supreme Court and other authorities have described the Carmack Amendment in broad preemptive terms, and have relegated the provision relating to other remedies to a category of almost total insignificance." *Underwriters at Lloyds, supra,* at 1116.

Courts in the First Circuit clearly ascribe to the majority view as a general matter. *See, e.g., Intech, Inc. v. Consolidated*

---

**1.** Section 2(b) states in relevant part:
As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing the bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred, within nine months after delivery of the property ... and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim.... Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

**32**

*Freightways, Inc.,* 836 F.2d 672, 678 (1st Cir.1987) (Carmack Amendment provides exclusive remedy in action for damages against delivering carrier even if damages are incidental); *see also Mesta v. Allied Van Lines International, Inc.,* 695 F.Supp. 63, 65 (D.Mass.1988) (Carmack Amendment provides the exclusive remedy for damages resulting from loss of, or injury to, goods transported by an interstate common carrier).

The Amendment, then, seems to apply to all actions against carriers that arise from damage to transported property. Orzell, however, points to *Sokhos v. Mayflower Transit, Inc.,* 691 F.Supp. 1578 (D.Mass. 1988) to support its proposition that the state law claims it asserts are not pre-empted by the operation of the Carmack Amendment. In *Sokhos,* the court determined that while an action for damages based on the destruction of property in transit was barred by the Carmack Amendment, an action for breach of contract for failure to deliver the property on time was not. Additionally, causes of action based upon Mass.Gen. Laws c. 93A, fraud and unfair claims settlement practices were similarly not pre-empted by federal law. *Id.* at 1581–82. The rationale for this judgment was that these claims were not based upon the loss of or damage to plaintiff's goods but upon other factors such as fraudulent contract formation and improper insurance claims settlement procedures. *Id.* at 1582; *see also Mesta,* 695 F.Supp. at 65.

■ Without deciding whether *Sokhos* correctly demarcates the boundary of pre-emption, I conclude that Orzell's assertion that its cause of action is beyond the scope of the Carmack Amendment is not persuasive. All the damages Urban suffered—and for which Urban seeks to hold Orzell liable—arose directly from the defects of the cable. These defects arose either at the point of manufacture or in transit. To the extent that Conrail is at fault for the defects, it is clearly damage resulting from the shipment of the cable and nothing else. There is no claim of fraud in the formation of the shipping contract or unfairness in the claims settlement procedure as there was in *Sokhos.*

■ Orzell simply seeks indemnification on a theory that it is unfairly being held liable for the negligence of other parties. Yet, the facts of this case lead to no other conclusion than that Orzell's claim falls squarely within the bounds of the Carmack Amendment. Orzell can not side-step the preclusive effect of federal law simply by designating his claim as one for indemnity. *See United States Steel v. S.S. Lash Italia,* 439 F.Supp. 365 (S.D.N.Y.1977). Because Orzell, by his own admission, has failed to file a written claim with Conrail within nine months of receipt of the cables, its claim against Conrail is barred.

Conrail's motion for summary judgment is allowed. Orzell's third party complaint against Conrail is dismissed.

SO ORDERED.