Fumari, J.
In this action for breach of contract, conversion, negligence and G.L.c. 93A unfair and deceptive practices, the plaintiff-shipper seeks to recover damages in the amount of $25,000.00 which she alleges is the value of a package containing diamonds lost in interstate transportation by defendant United Parcel Service, Inc. (“UPS”).
Defendant UPS admitted that it lost the plaintiffs package during interstate carriage, but answered by way of affirmative defense that its liability for such loss is limited under federal law to $100.00 as the plaintiff shipper did not declare an increased valuation on the “pick up record” (bill of lading) at the time of shipment.
The trial court made a general findingfor the plaintiff in the amount of $25,000, plus interest and costs. Neither this finding, nor the judgment entered by the court, specified the count(s) of the plaintiffs complaint under which recovery was granted.
The reported evidence indicates the following: Plaintiff Roberta Chafetz (“Chafetz”) operates a business from her home under the corporate name “Just the Two of Us Limited” which involves the wholesale purchase and discounted resale of luxury jewelry. In November, 1988, Chafetz received two packages from her New York jewelry supplier which contained five diamonds, each stone weighing approximately two carats with a value of $8,000.00 to $10,000.00, which were intended for her personal use. Chafetz examined the stones, found them to be of good quality but unsatisfactory for her personal needs, and repackaged them for return shipment.
Although plaintiff Chafetz had apparently never used any common carrier except the United States Post Office, she elected on this occasion to ship the diamonds by United Parcel Service. On November 11, 1988, she telephoned a UPS office to inquire about its procedures and to request pick-up of the packages. The plaintiff contends, and the trial court so found, that (1) she expressly informed the UPS telephone customer service representative that the two packages contained diamonds with a total value of $50,000.00 and that each package needed to be insured for $25,000.00, and (2) that the UPS representative agreed that this would be done and that a UPS driver would pick up the packages on the next business day, November 14, 1988.
O n November 14, 1988, a UPS driver arrived at the Chafetz’ home, accepted the two packages for shipment, gave Mrs. Chafetz her copy of the UPS “pick-up record” and requested a check in the amount of $6.65. No other conversation ensued. Chafetz did not read the pick-up record and was not asked to sign it. She testified that she expected and believed that her packages were fully insured upon pick-up by UPS.
*68 One of the two packages was subsequently lost or stolen during shipment.
The trial court found:
Prior to shipment, Plaintiff Roberta Cháfete informed Defendant of the value of the merchandise contained in packages to be shipped. [She] requested that the packages be insured to their full value was [sic] led to believe that they would be. Defendant did not insure the packages. Its failure to do so was not willful or knowing.
When Plaintiff... accepted the bill of lading, she did not know she was entering into acontractforthe shipment of goods. [She] did notread theBill of Lading. Under all the circumstances, her failure to do so was not negligent.
Mrs. Cháfete did not have actual knowledge of the terms of the tariff or the bill of lading. [She] was an unsophisticated shipper who relied on her telephone conversations with a UPS representative to the effect that the packages were insured.
The limitation of liability as setforth on the Bill of Lading was not brought to the attention of Mrs. Cháfete in a reasonable manner, particularly in light of the fact that she had previously chosen to enter into a contract which did not contain such a limitation. [She] did not agree to the limitation of liability which UPS now seeks to impose....
In an additional memorandum, the court listed four federal cases upon which it relied in reaching its conclusion as to the defendant’s liability,[2] and
reasoned that since UPS agreed to insure the lost diamonds for $25,000.00, itcannot now deny the extent of its liability on the ground thatplaintiffs failed to prove, if it did, the value of the diamonds at trial.
The defendant, now claims to be aggrieved by the court’s disposition of eight of its requests for rulings of law.[3]
*69 1. Disposition of the plaintiff s claims in this case for breach of contract, conversion and negligence should have been dictated by uncontroverted evidence that defendant UPS is a common motor carrier engaged in interstate commerce, and that the plaintiffs shipment was intended for interstate delivery from Newton, Massachusetts to New York City. It is established that the Carmack Amendment[4] to the Interstate Commerce Act (“ICA”), 49 U.S.C., has preempted state and common law theories of recovery against interstate carriers inconsistent with the Interstate Commerce Act. Hughes v. United Van Lines, 829 F.2d 1407, 1405 (7th Cir. 1987).
Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.
Adams Express Co. v. Croninger, 226 U.S. 491, 506, 33 S.Ct. 148, 152, 57 L.Ed. 314 (1913). Thus UPS’s liability for loss of an interstate shipment in this case is governed exclusively by the Interstate Commerce Act. 49 U.S.C. §10521; Missouri Pacific RR Co. v. Elmor & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); Intech, Inc.v. Consolidated Freightways, Inc., 836 F.2d 672, 677 (1st Cir. 1987); Lapp Insulator Co. v. Boston & Maine RR., 330 Mass. 205, 208 (1953).
The Carmack Amendment imposes strict liability upon a carrier for goods lost or damaged in interstate shipment irrespective of the carrier’s exercise of due care. Shipper's Nat’l Freight Claim Counsel, Inc. v. Interstate Commerce Comm., 712 F.2d 740, 745-746 (2nd Cir. 1983), cert. den. 467 U.S. 1251. While the carrier may not disclaim such strict liability, the CarmackAmendment does permit the carrier to limit the amount of its liability to a “value established by written declaration of the shipper or by written agreement.” 49 U.S.C. §§10730,11707(c) (4). Such limitation of liability is authorized under the federal statute only if, at the time of shipment, the carrier had approved tariff schedules on file with the Interstate Commerce Commission (“ICC”) listing varying transportation rates for corresponding shipment values to be declared in writing by shippers. At the time of the transaction in this case, UPS had such ICG approved rates which varied with declared value for all shipments between Massachusetts and New York.
As UPS was entitled to limit the amount of its liability, the dispositive question at trial and on this appeal is whether the amount of UPS’ liability was in fact limited to a “value established by written declaration of the shipper or by written agreement” of *70 the parties. Plaintiff Cháfete never made a written declaration of the $25,000.00 amount she now claims as the value of her lost package. Indeed, the only written document evidencing the parties’ transaction was the “pick-up record” or shipping receipt, a copy of which was given to Cháfete at the time of shipment. Such “pick-up record” or bill of lading was UPS’ “receipt... for property received [d] for transportation,” 49 U.S.C. §11707(a) (1), which set forth the terms of such transportation and constituted the sole contract of carriage between Chafete and UPS for the shipment in question. Adams Express Co. v. Croninger, 226 U.S. at 506; Pennsylvania Railroad Co. v. Olivit Bros., 243 U.S. 574, 582-583, 37 S.Ct. 468, 61 L.Ed. 908 (1917); Brockway-Smith Co. v. Boston & Maine Corp., 497 F. Supp. 814, 817 (D.Mass. 1980). It was error for the trial court to conclude that Cháfete’ telephone conversation with a UPS customer service representative resulted in a binding oral contract of carriage between the parties herein. Under federal law, the obligations of a carrier and the amount of any recovery by a shipper for lost or damaged goods are ordinarily determined solely from the provisions of their written contract or bill of lading. Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 30, 57 S.Ct. 73, 74, 81 LEd. 20 (1931); Thomas v. Trans World Airlines,Inc., 457F.2d 1053, 1058 (3rd Cir. 1972).
The pick up record or written contract in this case contained the following printed statement:
Unless a greater value is declared in writing in this receipt, the shipper hereby declares and agrees that the released value of each package or articles not enclosed in a package, covered by this receipt is $100.00, which is a reasonable value in the circumstances surrounding the transportation.
A column on the receipt captioned “DECLARED VALUE ** IF IN EXCESS OF $100.00” was left blank. In accepting this pick up record as presented, in neglecting to declare an increased valuation and in delivering her packages to UPS for shipment, plaintiff Cháfete became bound by the $100.00 limitation of UPS’ liability set forth therein. There was no basis herein for a finding that Cháfete is not bound by UPS’s limitation of liability simply because she did not understand that the pick up record was a contract binding on her, because she had no knowledge of its terms, or because the UPS driver did not specifically point out the clearly printed limitation statement and the self-evident declared value column on the receipt. Mrs. Cháfete was afforded a fair opportunity to read the unambiguous terms of the document delivered to her at the time of pick up and to impose a greater liability on UPS simply by inserting a $25,000.00 valuation for each package. She did not do so. A shipper is bound by the terms of a contract to which he is a party even if he has neither read the contract, Abbasciaciano v. Homes Lines Agcy., Inc., 144 F..Supp. 235, (D.C.Mass. 1956); Carney v. New England Tel. & Tel. Co., 353 Mass. 158, 165 (1967), nor signed the bill of lading, as such signature is not necessary. Caten v. Salt City Movers, 145 F. 428, 432 (2nd Cir. 1945). The Supreme Court has established that:
It is sufficient if the shipper accepts the carrier’s bill of lading without himself signing it. It becomes binding unon him bv his acceptance, he being presumed to know and accent the conditions of the written bill of lading.
The [shipper] by receiving and acting upon the receipt, although signed only by the [carrier], assented to its terms and the same thereby became the written agreement of the parties....
The receipt which was accepted showed that the charge made was based upon a [stated] valuation unless a greater value should be stated therein. The knowledge of the shipper that the rate was based unon value is to be presumed from the terms of the bill of lading and the published schedules *71 filed with the [Interstate Commerce! Commission. Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting ahigher value. To allowhim to do so, would be to violate the plainest principles of fair dealing [emphasis supplied],
American Rwy. Express Co. v. Lindenburg, 260 U.S. 584, 591-592, 43 S.Ct. 206, 67 L.Ed. 414 (1923).
Similarly, it is irrelevant that Cháfete elected to rely on prior, oral statements of shipment terms or valuation allegedly made by a UPS telephone customer service representative. “One who signs a contract in the absence of fraud or deceit cannot avoid it on the grounds that he did not read it or that he took someone else’s word as to what it contained.” Hughes v. United Van Lines, Inc., supra at 1417. It remains the shipper’s responsibility to examine the pickup record and bring any questions to the attention of the carrier before delivery of the package to the carrier. Id. at 1421. The parol evidence rule, fully applicable under the Interstate Commerce Act, indeed precludes the admission of prior, extrinsic oral statements to vary the terms of an unambiguous shipping receipt or contract. Kansas City So. Rwy. Co. v. Carl, 227 U.S. 639, 652, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913),[5] See also, Hopper Furs Inc. v. Emery Air Freight Co., 749 F.2d 1260, 1265 (8th Cir. 1984); Apartment Specialists, Inc. v. Purolator Courier Corp., 628 F.Supp. 55, 58-59 (D.DC. 1986).
Implicit in the trial court’s finding in this case is that parol evidence of prior oral statements between the parties was admissible to vary the terms of the pick up record because of fraud, deceit or mistake in the formation of the contract limiting UPS’s liability for shipment loss. See Chandler v. Aero Mayflower Trans. Co., 374 F.2d 129, 136 (4th cir.1967). A claim which “does not relate to loss and damage to... goods, but rather alleges mistake or fraud in connection with the formation of the contract... is not preempted by the Carmack Amendment.” Sokhos v. Mayflower Transit, Inc., 691 F.Supp. 1578, 1582 (D.Mass. 1988). The reported evidence is, however, wholly insufficient to support findings in this case of requisite elements offraud, including an intent to deceive by UPS and any reasonable reliance by Cháfete on alleged misrepresentations. At the time of shipment, UPS presented to Cháfete an unambiguous written pick up record which fully disclosed shipment terms, including valuation and liability limitation. UPS was under no obligation to insure that Cháfete read the bill of lading, Hughes v. United Van Lines, Inc., supra at 1421, and in no way endeavored to prevent or discourage her from doing so.
Conversely, Cháfete chose to ignore the only written receipt evidencing her delivery of what she alleges was $50,000.00 worth of diamonds to a common carrier. She paid without question or comment a mere $6.65 in total UPS charges which *72 necessarily and obviously included at least a pick up charge and interstate shipping costs for two packages. The minimal amount of such charges was sufficient to alert an ordinarily prudent person to the possibility that the shipment was not fully insured or accurately valued. Cháfete nevertheless remained silent, electing instead to rely unreasonably on the prior, verbal assurances of a telephone customer service representative. This case is then easily distinguished from the inapposite case authority relied upon by the plaintiff and trial court, wherein carriers failed even to issue effective bills of lading, much less present them to shippers, or expressly and intentionally mislead shippers as to limitations on their liability. See Chandler v. Aero Mayflower Trans. Co., supra at 129; Anton v. Greyhound Van Lines, Inc., 591 F.2d 103 (1st Cir. 1978).
Similarly, the evidence was insufficient to support any finding that the pick up record resulted from the mutual mistake of both parties as to the value of the plaintiff s packages. The parties’ contract was unambiguous. Plaintiff Cháfete’ mistaken reliance on prior conversations with UPS agents is indicative of a unilateral mistake which would notwarrantthe reformation of awritten contract of carriage. See Hopper Furs, Inc. v. Emery Air Freight Corp., supra at 1264-1265; Thomas v. Trans WorldAirlines, Inc., 457 F.2d 1053, 1057-58 (3rd Cir. 1972).
2. Given its finding that UPS’s conduct was notwillful or knowing, the trial court’s judgment for the plaintiff may have been based instead on Cháfete’ G.L.c. 93A claim. There is limited authority for theproposition that a shipper’s claim based not upon loss or damage to goods, but upon fraudulent contract formation or unfair settlement procedures violative of c. 93A is not preempted under federal law by the Carmack Amendment. Urban Elec. Co. v. Cable Index, 735 F.Supp. 29, 32 (D.Mass.1990); Mesta v. Allied Van Lines International, 695 F.Supp. 63 (D.Mass. 1988); Sokhos v. Mayflower Transit, Inc., supra at 1581.[6]
Although the determination that particular conduct is violative of G.L.c. 93A necessarily depends upon the circumstances of each case, Spence v. Boston Edison Co., 390 Mass. 604, 615 (1983), a trial court’s factual finding on this issue must be predicated on at least a minimum, threshold demonstration of unfair or deceptive acts. Generally, conduct is “unfair” if
without necessarily having been previously considered unlawful [it] offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness.
Federal Trade Comm. v. Sperry & Hutchinson, 405 U.S. 233, 244-245 n.5, 92 S. Ct. 898, 31 L.Ed.2d 170 (1972). Conduct is “deceptive” if it “possesses a tendency to deceive,” *73 Leardi v. Brown, 394 Mass. 151, 156 (1985), or if it creates an overall impression which is misleading. The trial court’s findings on this issue were restricted to two determinations; namely, that the plaintiff was an “unsophisticated shipper” and that she was “misled” that the diamonds would be insured for $50,000.00 during a telephone conversation with a UPS agent. Thefirstfinding is inconsistent with a reasonable view of the reported evidence as to Chafetz’ corporate business experience, receipt upon vendor referral of valuable jewelry and her implied experience with return shipments of the same. The fact that this was Chafetz’ first business contact with UPS did not warrant a finding that she was an “unsophisticated shipper.” Moreover, even assuming that she was, there is no factual support in the record for a finding that UPS exploited such shipper inexperience or engaged in any conduct which may be reasonably viewed as violative of G.L.c. 93A The trial court’s determination that Chafetz honestly misunderstood the terms of the parties’ transaction did not necessarily warrant a finding that such misunderstanding resulted from misleading, deceptive or unfair conduct by UPS. Reasonable inferences arising from the reported evidence are, in fact, to the contrary.
3. Accordingly, the trial courf s judgmentfor the plaintiff in the amount of $25,000.00 plus interest and costs is hereby vacated. Judgment for the plaintiff in the amount of $100.00 under Count I plus interest and costs is to be entered. So ordered.

 Anton v. Greyhound Lines, Inc., 591 F.2d 103 (1st Cir. 1978); Hughes v. United Van Lines, Inc., 828 F.2d 1407 (7th Cir. 1987); Chandler v. Aero Mayflower Transit Co., 374 F.2d 129 (4th Cir. 1967) and Sokhos v. Mayflower Transit, Inc., 691 F.Supp. 1578 (D.Mass. 1988).

 “5. The Carmack Amendment specifically authorizes limitation of liability provisions such as those contained in UPS’s tariff and pickup record, which constitute the contract of carriage.
Ruling: Allowed in nart. Denied in part. The Carmack Amendment authorizes limitation of liability provisions such as those contained in UPS’s tariff and bill of lading. The remaining portion of the request (“which constitute the contract of carriage between UPS and Plaintiff’) is denied.
“6. A shipper is charged with knowledge of the contents of UPS’s tariff and pickup record.
Ruling: Allowed as a general proposition of law, but a carrier can mislead an unsophisticated shipper.
“7. The plaintiffs’ and UPS’s rights are governed ‘conclusively and exclusively’ by the terms of the tariff and the pickup record.
Ruling: Denied.
“8. It is the shipper’s responsibility to examine the pickup record and bring any errors to the attention of the carrier before entrusting the package to the carrier.
Ruling: Allowed as general proposition of law. However, the failure to read an agreement is not negligence per se, but must be considered in light of all the facts and circumstances.
“9. It is settled law that a person is bound by the terms of a contract to which such person is a party even if the individual has not read the contract.
Ruling:Allowed asageneralproposition oflaw,butan agreementcanbesetaside ordeclared void under certain circumstances.
“10. By accepting a copy of the pickup record, the shipper assents to and is bound by its terms and conditions.
Ruling: Allowed as a general proposition of law. But an unsophisticated shipper relying on the representations of a carrier can be misled.
“11. There is an agreement in writing that the released value is UPS’s limit of liability even if the shipper leaves blank the declared value space on the pickup record.
*69 Ruling: Allowed as a general proposition of law.
“12. The receipt or bill of lading is valid without the customer’s signature.
Riding: Allowed as a general proposition of law.
Thetrialcourtalso denied “as being excessive and as inconsistent with the facts found” UPS’s supplemental requests 1-3 which pertained to the insufficiency of the evidence to establish the $25,000.00 alleged value of plaintiffs package.

The original Carmack Amendment, 49 U.S.C. §20(11), was recodified into 49 U.S.C. §§1107, 10103 and 10730. The new sections of the United States Code continue to be commonly termed the Carmack Amendment
Section 11707 of 49 U.S.C. provides, in relevant part “A common carrier, subject to the jurisdiction of the Interstate Commerce Commission... shall issue a receipt or bill of lading for property in receipt for transportation.The carrier... and any other carrier that delivers the property and is providingtransportation or sendee subject to the jurisdiction of the Commission ...are liable to theperson entitled to under the receiptorbill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by... [the carrier].”
Section 10730 of 49 U.S.C. states, in relevant part: “The Interstate Commerce Commission may require or authorize ... a carrier... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or by written agreement, when that value would be reasonable under the circumstances surrounding the transportation.”

 The Supreme Court slated: ‘To permit such a declared valuation to be overthrown by evidence aliunde the contract for purposes of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed would both encourage and reward undervaluation and bring about preferences and discriminations forbidden by law. Such aresultwould neitherbe justnor conducive to sound morals orwise policies.” See also, Eliasberg Bros. Inc. v. Railway Express Agcy., Inc., 302 ICC 305 (1957), wherein the ICC held: “It is well-settled ... that... whenever goods are delivered to a carrier for transportation and a bill of lading is tendered to the shipper, the latter is bound to examine the document and ascertain its contents. If he accepts it without objection, he is bound by its terms, and resort cannot.be had to prior oral negotiations to varvthose terms.... When the [shipper’s! authorized representative accented the receipt for the shipment, from the driver and placed it in her nocketbook without examination. acceptance of its terms was manifested. It should have been understood that the receipt was an offer or proposed contract tendered by the [carrier]. The course of action followed was the equivalent of signing a contract without reading it. The [shipper] was, therefore, bound by the acceptance of the receipt.” Id. at 308-309.

 It should be noted that the sole issue posed in Sokhos with respect to c. 93A was whether the Carmack Amendment precluded a shipper’s recovery of multiple, punitive damages. Expressly relying on Reed v. Aacon Auto Transport, Inc., 637 F.2d 1032 (10th Cir. 1981) and Hubbard v. Allied Van Lines, Inc., 540 F.2d 1224 (4th Cir. 1976), the Sokhos court ruled that such damages were recoverable. Sokhos, supra at 1581-1582. However, Reed was overturned by the Tenth Circuit Court of Appeals in Underwriters at LLoyds of London v. North Amer. Van Lines, Inc., 890 F.2d 1112, 1113 (10th Cir. 1989), and Hubbard is a 49 USC §316(d) action wholly unrelated to a carrier’s liability for damage to or loss of goods in transit.
Sokhos was followed in Metsa as authority for the proposition that c. 93A actions for a carrier’s unfair investigation and settlement of claims did not involve such carrier’s transportation of goods and were thus not preempted by the Carmack Amendment. Metsa, supra at 65. The actual Sokhos holding was that G.L.c. 176 claims for unfair settlement practices were not preempted.
Finally, noting that no claim of fraud in the formation of the shipping contract or of unfair settlement procedures was presented, the Urban Elec. Co. court factually distinguished Sokhos “without deciding whether Sokhos correctly demarcates the boundary of preemption. Urban Elec. Co., supra at 32.