Summerville, J.
This is an appeal by the plaintiff from the allowance of defendant’s motion for summary judgment. We affirm the decision of the motion judge.
Plaintiff Alan Dinsfriend, (“Dinsfriend”), a dealer in art, brought this action against the defendant, Fine Arts Express, Inc., (“FAE”), a common motor carrier, to recover the full value of two objets d’art (sculptures) damaged while in interstate transportation. Dinsfriend contracted with FAE to ship the artwork on two different occasions: first in November, 1993, and again in December, 1993. Unfortunately, the sculptures were damaged on both occasions.
Although other discussions took place between the parties, ultimately Dinsfriend brought a complaint sounding in negligence and violation of the Massachusetts Consumer Protection Act, G.L.c. 93A, for the full value of each sculpture.
The sole issue raised by this expedited appeal is the propriety of the court’s allowance of the defendant’s motion for summary judgment made pursuant to Dist./Mun. Cts. R. Civ. P, Rule 56(c). Rule 56(c) states, in part, that a motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any . material fact and that the moving party is entitled to a judgment as a matter of law.”
Facts
The material facts under which this action arose are not in dispute. On two occasions, Dinsfriend telephoned FAE to arrange shipment of artwork to New York City. When FAE’s employees arrived at Dinsfriend’s residence to pick up the artwork, they obtained *228 Dinsfriend’s signature on a bill of lading and provided him with a duplicate receipt. The bill of lading consisted of a printed, one-page form with terms and conditions printed on the back.
In addition to providing his signature on the bill of lading, the plaintiff also initialed a statement appearing in a box at the lower right-hand comer of the document. The box contained the following statement:
Note — Where the rate is dependant on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding
Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions, including those provided on the back of this document and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.
NOTICE: The shipper signing this contract must insert in the sapee [sic] above either his declaration of the actual value of the shipment with specific values per item or the words, “$.60 per pound per article”, [sic] Otherwise the shipment will be deemed released to a maximum value in dollars equal to .60 times the weight of the shipment in pounds.
SHIPPER_DATE_
On both occasions, the statement “$.60 PER POUND PER ARTICLE” had been typewritten onto the notice in the space provided for the shipper’s alternate valuation of freight. On both occasions, Dinsfriend neglected to declare a higher valuation upon delivery of the sculptures to FAE’s employee. Instead, Dinsfriend only added his initials “A.D.” (as shipper) at the bottom of the notice and added the date in the space provided.
When it was discovered that the sculpture sent in the November shipment was damaged, FAE offered Dinsfriend a $600 credit toward future shipments in compensation for the loss. According to the trial court’s memorandum of decision, the $600 credit represented fifty percent of the full value of the sculpture damaged in November. By agreement of both Dinsfriend and FAE, this $600 credit was applied to the cost of the December shipment.
The instant case was initiated after the sculpture sent in the December shipment was damaged.
After receiving an appraisal of the market value of both.sculptures, Dinsfriend submitted a written demand for damages upon FAE, dated March 1, 1994. FAE responded with a letter dated March 25, 1994, stating that Dinsfriend had purchased no insurance from FAE and informed him that it had submitted the matter to its insurance carrier for review.
Thereafter, Dinsfriend sent another demand letter, this time through counsel, on April 28, 1994. This letter demanded $13,600 for the damages sustained by both sculptures and was made pursuant to G.L.c. 93A. On May 3,1994, FAE responded to the Chapter 93A demand letter by offering $18.00 based on the $0.60 per pound release value found on the bill of lading.
Plaintiff commenced this action on June 28, 1994, alleging the defendant’s negligence in the packaging and handling of both sculptures. The plaintiff included two counts under Chapter 93A alleging that defendant’s offer of $18.00 under the claimed limitation of liability was unreasonable.
After submission of defendant’s memorandum in support of summary judgment, and plaintiff’s memorandum in opposition, the court heard oral argument from both parties. In making her decision, the motion judge also relied on the pleadings, excerpts from depositions and affidavits submitted by both parties.
*229 According to the court’s memorandum of decision on the motion for summary judgment, the defendant apparently conceded liability for the damages but contended that its liability was limited to the sum of $18.00 offered in settlement. Finding as a matter of law that the Carmack Amendment pre-empted the plaintiff’s common law claims of negligence, the court entered judgment in favor of the plaintiff in the amount of eighteen dollars.
Discussion
The undisputed facts presented here indicate Dinsfriend’s packages were intended for interstate delivery and that FAE was, at all relevant times, a common motor carrier providing interstate transportation and related services subject to the Interstate Commerce Commission (ICC). Clearly, the disposition of the plaintiff’s claims should be governed exclusively by the Interstate Commerce Act. Adams v. Croninger, 226 U.S. 491, 33 S.Ct. 148 (1913); Missouri Pacific R.R. Co. v. Elmer and Stahl, 377 U.S. 134, 84 S.Ct. 1142 (1964).
Dinsfriend states in his brief that “federal law is applicable and provides that a common carrier has liability ‘for the actual loss or injury to property caused by the receiving carrier.’” 49 U.S.C. 11707 (a) (1).
The Carmack Amendment, 49 U.S.C. 11707(a) and (c), subjects a common motor carrier transporting cargo in interstate commerce to absolute liability for “actual loss or injury to property.” Missouri Pacific R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964); Underwriters at Lloyds of London, Inc. v. North American Van Lines, 890 F.2d 1112, 1115 (10th Cir. 1989). While a carrier may not disclaim such strict liability, the Carmack Amendment allows a carrier to limit the extent of that liability to a “value established by written declaration of the shipper or by written agreement.” 49 U.S.C. §10730 (b)(1).
The dispositive issue on this appeal is the validity of FAE’s claim of limited liability found in the bill of lading.
Before a carrier’s attempt to limit its liability will be effective, the carrier must “(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper’s agreement as to his choice or carrier liability limit; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.” Rohner Gerig Co., Inc. v. Tri-State Motor Transit, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc), citing Hughes v. United Van Lines, Inc., 829 F.2d 1407 (7th Cir. 1987). Although not articulated in the same language, Dinsfriend’s argument in opposition to summary judgnjent in this matter relates to the third element provided in Rohner Gerig.
Dinsfriend presents a series of arguments to support his position that FAE was not entitled to the limitation of liability. With one exception, the arguments advanced on appeal are the same as those raised before the court. We have considered each argument which raises a question of law and conclude that most do not require extensive discussion.
1. Dinsfriend first contends that FAE is strictly liable for actual damages for goods damaged in shipment as a matter of federal law. Dinsfriend cites 49 U.S.C. 11707 (c)(1) for the proposition that a carrier is prohibited from limiting its liability for damages:
A common carrier and freight forwarder may not limit or be exempt from liability imposed under subsection (a) of this section except as provided in this subsection.
However, the plain language of this statute prohibits only limitations of liability that are in violation of §11707. By implication, it follows that limitations of liability that are in compliance with §11707 are acknowledged as valid. National Small Shipments Traffic Conference, Inc. v. U.S., 887 F.2d 443, (3rd Cir. 1989).
2. Dinsfriend also contends that FAE is not entitled to the $0.60 per pound limitation *230 of liability because it did not comply with the specific terms of its rate tariff[3] on file with the ICC.Dinsfriend states that FAE did not comply with its tariff No. 848(b):
The carrier’s maximum liability shall be sixty cents ($.60) per pound for the actual value of any lost or damaged articles, if the shipment has been expressly released bv the shipper to such value per article.
and 848(c):
The released value must be entered on the bill of lading and may be completed only bv the person signing the Bill of Lading.
Dinsfriend contends that “[s]ince he did not complete or expressly enter the limited liability clause or expressly release at $.60/pound, the clause is void.”
We fail to see how the plaintiff’s signature on the bill of lading, in addition to his initials on the box containing the limitation of liability, did not amount to an express release of his property to the carrier under the terms described on the bill of lading. “A party who signs an instrument manifests an assent to it and may not later complain that he did not read the instrument or that he did not understand its contents.” CALAMARI & PETILLO, CONTRACTS, §9-42 (2d Ed. 1977). It is well-settled that “in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not or whether he can read or not.” Spritz v. Lishner, 355 Mass. 162, 164 (1969). See, also Hughes v. United Van Lines, Inc., 829 F. 2d. 1407 (7th Cir. 1987) (“One who signs a contract... cannot avoid it on the grounds that he did not read it or that he took someone else’s word as to what it contained.”); Chavetz v. United Parcel Service Inc., 1992 Mass. App. Div. 67, 71 (“It [is] the shipper’s responsibility to examine the pick-up record and bring any questions to the attention of the carrier before delivery of the package to the carrier”). The sentence which appears immediately above Dinsfriend’s initials on the bill of lading states that, unless the shipper provides an agreed or declared value, “the shipment will be deemed released to a maximum value in dollars equal to .60 times the weight of the shipment in pounds.”
In further support of his contention that he did not “expressly release” the sculptures to the release value, Dinsfriend points out that the $0.60 release rate had already been typed on the bill of lading when it was presented for his signature. We find this unpersuasive in these circumstances where Dinsfriend specifically provided his initials to the portion of the bill of lading which explained the application of the release value if a shipper failed to declare an alternative value.
In 1992, the Fifth Circuit announced that the rule of “substantial compliance” is the correct standard of review where a shipper challenges a carrier’s limitation of liability based on inconsistencies set forth in the filed ICC tariff and the terms of the bill of lading. Rohner Gerig Co., Inc. v. Tri-State Motor Transit, 950 F.2d 1079, 1083 (1992). The motion judge found that
A box on the front of the bill of lading form contains the words ‘Note’ and ‘Notice’ in bold conspicuous letters, followed by clear language advising the shipper, an experienced businessman, that, unless he specified an alternate valuation of his goods in the adequate space provided, the carrier’s liability would be limited to the ‘released’ value of $0.60 per pound.
In light of these specific findings of fact made by the motion judge, we find the substantial compliance standard to be fully satisfied.
3. Dinsfriend also asserts the common-law doctrines of waiver and estoppel.
Dinsfriend contends that FAE is estopped “by its conduct” from asserting the $0.60 *231 limitation of liability. Dinsfriend claims here that FAE’s offer to split the actual damages involved in the November shipment (by its offer of a $600 credit toward future shipments) led him to believe that FAE would not invoke the limitation of liability in all future shipments. Dinsfriend argues that “by its conduct, Fine Arts waived the alleged $.60/pound limit of liability.”
To prevail under Massachusetts law on a claim of estoppel, a party must prove three elements: “1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made, 2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made and 3) detriment to such a person as a consequence of the act or omission.” Cadrin v. New England Tel. & Tel., 828 F. Supp. 120 (D. Mass. 1993), and cases cited. The trial court addressed the first element by stating in her memorandum of decision that “the shipper has adduced no reliable evidence that the carrier ever promised to split liability in all future shipments, and, therefore, any reliance by the shipper upon the carrier’s previous agreements would be unreasonable.”
Dinsfriend’s alternative assertion that FAE “waived” its rights under Federal law is also unpersuasive. Waiver is often defined as “the voluntary relinquishment of a known right.” RESTATEMENT (SECOND) OF CONTRACTS, §84 comment b (1981). The motion judge made no finding which would suggest that FAE intended to waive its right to limit its liability.[4] Indeed, the fact that FAE obtained Dinsfriend’s initials on the limitation of liability clause on both occasions indicated that it intended to preserve its rights under the terms and conditions on the bill of lading. We would only add that FAE’s decision to offer a $600 credit toward future shipments could only be seen as a conciliatory business decision offered to restore good will with a long-standing customer.
4. Dinsfriend also argues that its Chapter 93A claims are not barred by the application of federal law to this case. Presumably, the gravamen of this argument is that FAE’s settlement offer of $18 in response to his Chapter 93 A demand letter was unreasonable “in relation to the injury” claimed. G.L.c. 93A, §9(3). We agree with the trial court finding that “as a matter of law a settlement offer in the exact amount to which [Dinsfriend] is entitled is not an unfair or deceptive act.”
Dinsfriend cites Mesta v. Allied Van Lines, 695 F. Supp. 63, 65 (1988), which affirms a shipper’s right to pursue Chapter 93A remedies despite the application of the Carmack Amendment to determine the measure of damages based on loss of property in interstate commerce. The holding in Mesta is based on a finding that the plaintiff’s 93A claims were based on a carrier’s conduct “in investigating and responding to [a shipper’s] *232 claim.” Mesta, at 65. We find Mesta inapposite in the present case inasmuch as Dins-friend has presented no facts suggesting FAE acted in an “unfair or deceptive” manner in the investigation or response to his claim.
Accordingly, the court’s allowance of summary judgment is affirmed. Appeal dismissed.

 A rate tariff is a “[statement by a carrier to possible shippers that it will furnish certain services under certain conditions for a certain price.” Union Wire Rope Corp. v. Atchison T. & S.F. Ry. Co., 66 F.2d 965, 966.

 On appeal, Dinsfriend claims that the motion judge erred in failing to consider the significance of his affidavit in opposition to summary judgment. Dinsfriend argues that his uncontested statement that Fine Arts agreed to transport the December, 1993, shipment at “no charge” because of the damage to the November, 1993, shipment was “contrary to any suggestion that the Federal limit of liability provisions applied to the damaged first shipment or the promised ‘free of charge’ second shipment.” Dinsfriend states in his brief that “these uncontested facts support waiver, estoppel and certainly an argument that the Federal limit of liability did not apply.”
We believe the motion judge did consider these facts. In her Memorandum of Decision the motion judge summarized all Dinsfriend’s arguments in opposition to summary judgment. The motion judge characterized one of Dinsfriend’s arguments as follows:
[FAE] is estopped from asserting a $0.60 per pound limit of liability because it had agreed to give [Dinsfriend] a $600 credit (50% of the damages) in settlement of the shipper’s claim for a previously damaged shipment of goods.
The characterization of this argument belies the notion that the motion judge did not consider these facts.